IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALFRED LOWE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]   2:24-cv-824-ACA |
| | ] |
| HOLMES MOTORS INC., | ] |
| | ] |
| Defendant. | ] |

# MEMORANDUM OPINION AND ORDER

Plaintiff Alfred Lowe claims that his supervisors and coworkers harassed and discriminated against him because of his race. Mr. Lowe further claims that his complaints caused him to be demoted and then terminated. He brings this action against his former employer, Defendant Holmes Motors Inc., for (1) hostile work environment on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981 ("Counts One and Two"); (2) disparate treatment on the basis of race, in violation of Title VII and § 1981 ("Counts Three and Four"); (3) failure to promote on the basis of race, in violation of Title VII and § 1981 ("Counts Five and Six"); and (4) retaliation after reporting race discrimination, in violation of Title VII, 42 U.S.C. § 2000e-3(a), and § 1981 ("Counts Seven and Eight"). (Doc. 1 ¶¶ 79–107).

Holmes Motors moves to dismiss Count One for failure to timely exhaust and failure to state a claim for racially hostile work environment, and Counts Seven and Eight for failure to allege sufficient facts from which a reasonable jury could find that Mr. Lowe's protected activity caused his termination. (Doc. 8). The court **DENIES** Holmes Motors's partial motion to dismiss. Because Mr. Lowe's allegations of hostile work environment underlying Count One are sufficiently related, they constitute a single, continuous event about which Mr. Lowe timely filed his Equal Employment Opportunity Commission ("EEOC") charge. And because Counts Seven and Eight allege sufficient plausible facts that, when taken as true, state a retaliation claim, both counts state claims upon which relief may be granted.

I.  BACKGROUND

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Mr. Lowe attached to his complaint a copy of his EEOC charge. (Doc. 1-1). Because exhibits attached to a complaint are considered a part of the pleading, the court incorporates into the description of facts the allegations made in the charge. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Saunders v. Duke*, 766 F.3d

2

1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).").

Holmes Motors hired Mr. Lowe, a black male, in April 2019. (Doc. 1 ¶¶ 13–14). Holmes Motors told Mr. Lowe he would be a lube technician with starting pay of $16 per hour. (*Id.* ¶ 15). Despite what he was told, Mr. Lowe started in reconditioning, detailing cars for two days until management moved him to the service department at a rate of pay of $10 per hour. (*Id.* ¶¶ 15–18). After Mr. Lowe "repeatedly discussed his wage" and "prove[d] himself," Holmes Motors promoted Mr. Lowe to lead technician with a corresponding increase in pay of $18 per hour. (Doc. 1 ¶¶ 19–20).

Mr. Lowe witnessed several instances where employees and supervisors treated blacks differently than whites while employed at Holmes Motors. Supervisors and employees lied to black customers and treated them rudely. (*Id.* ¶¶ 46–47, 67). White employees refused to work with black customers and would "run and hide in the back" when black customers arrived. (Doc. 1-1 at 2). When black customers came to the business, supervisors would direct only Mr. Lowe to work with them. (Doc. 1 ¶ 69). And when supervisors wanted to fire a black employee, they asked Mr. Lowe to lie about that employee. (*Id.* ¶ 47).

Mr. Lowe's complaint also contains specific instances of alleged racial harassment and/or retaliation during his employment. Fourteen months after he started working at Holmes Motors, a coworker called Mr. Lowe the n-word, referred to him as "homey," and asked if Mr. Lowe was going to "jump on him." (*Id.* ¶ 22). Mr. Lowe reported the incident to his supervisor, who told Mr. Lowe to calm down and said his coworker "didn't mean it that way." (Doc. 1 ¶¶ 26–27). The supervisor did not counsel or discipline the coworker. (*Id.* ¶ 27). Ten months later, the same coworker called Mr. Lowe the n-word under his breath and said that "he was shocked [Mr.] Lowe worked there because he look[ed] like a thug, a hoodlum[], and drug dealer." (*Id.* ¶¶ 30–32). Mr. Lowe reported the slurs to his supervisor, who once again took no action against the coworker. (*Id.* ¶ 34).

Almost two years later, while Mr. Lowe and a white coworker played a card game, Mr. Lowe's manager remarked "the white guy got you" and asked what kinds of card games "black people play." (Doc. 1 ¶¶ 37–38). Mr. Lowe complained about the manager's remarks. (*Id.* ¶¶ 40–41). The next day, the manager selected Mr. Lowe over two white employees to "repossess[] a car from a high-crime area predominantly inhabited by African Americans" because Mr. "Lowe w[as] [] the perfect person to handle the [task]." (*Id.* ¶¶ 42–44). Mr. Lowe told the manager he thought the assignment was because of his race, offended him, and made him uncomfortable. (*Id.* ¶¶ 44–45).

Two months later, Mr. Lowe filed a complaint with Holmes Motors's human resources department about unequal treatment and hostile work environment. (Doc. 1 ¶ 49). After he complained, Mr. Lowe's supervisor asked him if he wanted a promotion with a pay raise, telling him that Holmes Motors did not want another lawsuit. (*Id.* ¶¶ 50, 52). Mr. Lowe accepted the promotion, but his pay was still $3 less than the pay of his white counterparts. (*Id.* ¶ 51).

After his promotion, a different white supervisor told Mr. Lowe that he should not have been promoted. (*Id.* ¶ 53). That supervisor told Mr. Lowe others thought he should not be a supervisor because he wore braids and had gold teeth. (Doc. 1 ¶ 54). Another white employee called Mr. Lowe a "bitch" during his training for the promotion. (*Id.* ¶¶ 55, 57). That same day, the supervisor who promoted Mr. Lowe told him that "[n]o one want[ed] [Mr. Lowe] working in the office," that he was "not fit for the job," and asked him to step down. (*Id.* ¶¶ 58–59). The promotion and pay raise lasted fewer than three weeks, but Holmes Motors continued to require Mr. Lowe to perform the new position's duties. (*See id.* at ¶¶ 50, 58–60).

In August 2023, another employee cursed at Mr. Lowe and called him derogatory names. (Doc. 1 ¶ 61). Mr. Lowe reported the incident to human resources the next day, but nobody ever followed up with him about his complaint. (*Id.* ¶ 62). Mr. Lowe filed a charge with the EEOC two months later. (*Id.* ¶ 71; doc. 1-1).

Within two days of filing the EEOC charge, a Holmes Motors supervisor announced that Mr. Lowe was now a service manager. (*Id.* ¶ 72). A week after the meeting, the same supervisor told Mr. Lowe that Holmes Motors "only wanted him to be a shop [foreman] but would try to appease him with the [promotion] in order to get him to drop his [EEOC] charge." (Doc. 1 ¶¶ 73, 75). Mr. Lowe did not drop his charge, and two weeks thereafter, the same supervisor told Mr. Lowe that "he was just a service tech[nician]." (*Id.* ¶ 74).

After Mr. Lowe's complaints, Holmes Motors excluded Mr. Lowe from office activities, denied him access to the office, and blocked him from the computer system so that he could not order parts or complete tasks for his job. (*Id.* ¶ 65; doc. 1-1 at 2). In December 2023, Holmes Motors filed a position statement with the EEOC, and in February 2024,[1] Holmes Motors terminated Mr. Lowe. (Doc. 1 ¶¶ 76–77).

## II.   DISCUSSION

Holmes Motors moves to dismiss Counts One, Seven, and Eight on the ground that Mr. Lowe fails to state a claim upon which relief may be granted. (Doc. 9). The court will consider Holmes Motors's arguments supporting dismissal of Count One followed by its arguments as to Counts Seven and Eight together.

---

[1] The complaint states that Holmes Motors terminated Mr. Lowe in February 2023 (doc. 1 ¶ 77), but it is clear from the facts alleged in the complaint that this was a typographical error (*see* doc. 1 ¶¶ 12–77; *see also* doc. 9 at 14 n.5; doc. 11 at 5 n.1).

1. Count One: Title VII Hostile Work Environment

A workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" violates Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quotation marks omitted).

Mr. Lowe asserts in Count One that Holmes Motors created a racially hostile work environment when "managers, trainers, and employees" made inappropriate and offensive racist remarks, including the use of the n-word toward him without consequences; ridiculing him for playing cards against a white man; telling him he looked like a "thug, hoodlum, and drug dealer"; requiring him, and not his white coworkers, to repossess a car in a high-crime, predominantly African American area because he looked like the right person for the job; requiring him, and not his white coworkers, to work with black customers; asked him to lie about black employees to terminate them; and denied him a promotion because of his braids and gold tooth. (Doc. 1 ¶ 81). Mr. Lowe also asserts that Holmes Motors created a hostile work environment by repeatedly failing to follow harassment procedure and refusing to investigate, prevent, or address Mr. Lowe's many complaints. (*Id.* ¶ 85).

Holmes Motors contends that Count One's racially hostile environment claim asserts at least two separate claims: one relating to a series of acts from August 2020

7

through June 2021, and the other relating to a series of acts from May 2023 through Mr. Lowe's termination. (Doc. 9 at 22–23). It argues that Mr. Lowe did not timely exhaust his August 2020 and June 2021 allegations because he failed to file his EEOC charge until November 2023. (*Id.* at 22). Holmes Motors claims that the 2023 acts are not sufficiently severe and pervasive to state a claim of racially hostile work environment. (*Id.* at 23–27).[2] Mr. Lowe responds that all of the acts alleged in the complaint are sufficiently related to constitute one continuous violation. (Doc. 11 at 8–13).

A plaintiff alleging a Title VII violation is generally required to file a charge with the EEOC "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Otherwise, the claim is time-barred. *Morgan*, 536 U.S. at 109. But hostile environment claims are treated differently because "[t]heir very nature involves repeated conduct," and "a single act of harassment may not be actionable on its own." *Id.* at 115. Claimants may therefore include prior acts in their claim when the prior acts are "part of the one hostile work environment claim." *Id.* at 117. Indeed, the hallmark of this analysis is not the amount of time passing between the acts, but the relation of the acts. *Id.* at 118.

---

[2] This argument reflects a sufficiently particular denial of conditions precedent following Mr. Lowe's proper assertion that he performed all conditions precedent. (*See* doc. 1 ¶¶ 8–10); Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."); *Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010).

8

To demonstrate this point, the *Morgan* Court employed a hypothetical in which a plaintiff alleged "[a]cts [that] contribute[d] to a hostile environment on days 1–100 and on day 401, but . . . no acts between days 101–400." *Morgan*, 536 U.S. at 118. It "d[id] not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole." *Morgan*, 536 U.S. at 118. The question is only whether "an act on day 401 [related] to the acts between days 1–100, or . . . [there was] certain intervening action by the employer." *Id.*; *see also Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007); *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1303 (11th Cir. 2023). Therefore, this court must decide whether the acts in 2020 and 2021 are sufficiently related to the 2023 acts to constitute one part of the whole.

As an initial matter, Holmes Motors's argument that there was a two-year gap in Mr. Lowe's dated allegations demands more from Mr. Lowe than what is required at this stage of the proceedings because it ignores undated allegations that Mr. Lowe asserts occurred during his employment. (*See* doc. 9 at 12, 22–23; doc. 1 ¶¶ 66–69) (allegations that Mr. Lowe was subjected to and/or witnessed discrimination such as white employees asking him to participate in discrimination against other black employees; asking him, not other white employees, to work with black customers; and witnessing white employees treat black customers rudely). "Rule 8's pleading standard does not require detailed factual allegations" if the complaint "contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quotation marks omitted). Although the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," facts that "raise a reasonable expectation that discovery will reveal evidence of the defendant's liability" are sufficient. *Id*. (quotation marks omitted). Accordingly, Mr. Lowe is not required to identify every specific date on which each incident of racial harassment or discrimination occurred. *See id*.

Even without the undated allegations, Holmes Motor's argument fails. Read in the light most favorable to Mr. Lowe, the court finds that his 2020, 2021, and 2023 allegations are sufficiently related. The allegations demonstrate that Holmes Motors's management and employees repeatedly made racially offensive remarks to Mr. Lowe without corrective action by Holmes Motors. (*See, e.g.*, doc. 1 ¶ 22 (2020: coworker calls Mr. Lowe the n-word); *id.* ¶¶ 30–31 (2021: coworker calls Mr. Lowe the n-word and says he looks like a criminal); *id.* ¶¶ 42, 54 (2023: different supervisors tell Mr. Lowe he is the "perfect person" for a task in a high-crime, predominantly African American area and that he should not be a supervisor because of his braids and gold tooth); *id.* ¶¶ 26, 34, 45 (Holmes Motors takes no remedial action after Mr. Lowe complains about these events)). These allegations reflect the same actionable hostile environment claim. *See Morgan*, 536 U.S. at 120.

The court finds that these specific facts are sufficiently related to constitute a single incident of racial harassment and that Mr. Lowe pleads factual content allowing the court to draw the reasonable inference that Holmes Motors is liable for the misconduct alleged. *See* Fed. R. Civ. P. 8(a)(2). Accordingly, the court **DENIES** Holmes Motors's motion to dismiss Count One.

    2.    Counts Seven and Eight: Title VII and § 1981 Retaliation

In Counts Seven and Eight, Mr. Lowe asserts that he engaged in eight protected activities that resulted in retaliation, including two instances of reporting his coworker's use of racial slurs, three instances of complaining about his manager's offensive racial remarks, one instance of reporting unequal treatment and hostile work environment to human resources, one instance of complaining about his coworker's cursing at him, and the filing of his EEOC charge. (Doc. 1 ¶ 102). Mr. Lowe contends that Holmes Motors retaliated against him through five adverse actions, including requiring him to work in a high-crime, predominantly African American area, removing computer access, prohibiting him from coming into the office, refusing to promote him, and terminating him. (*Id.* ¶ 103). Holmes Motors challenges only Mr. Lowe's termination as retaliation. (*See* doc. 9 at 27–28, 30).

Title VII prohibits employers from retaliating against an employee because the employee opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Retaliation claims are also cognizable under § 1981 and require

"the same proof and analytical framework" as those arising under Title VII. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023). To state a claim "of retaliation under Title VII, the plaintiff must [allege] (1) that []he engaged in statutorily protected expression; (2) that []he suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quotation marks omitted).

Holmes Motors argues that Mr. Lowe fails to allege facts that "establish a convincing mosaic of evidence that" Holmes Motors terminated him because of his protected activity. (Doc. 9 at 5, 29–32; doc. 13 at 11). But the convincing mosaic standard, like the *McDonnell Douglas* standard, "is an evidentiary tool that functions as a procedural device, designed only to establish an order of proof and production." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). Although facts satisfying these evidentiary tools would suffice to state a claim, the failure to allege facts satisfying the convincing mosaic or *McDonnell Douglas* tests does not necessarily defeat a claim at the dismissal stage. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296–97 (11th Cir. 2021). The issue for the court to determine is simply whether the complaint plausibly alleges a retaliation claim.

Holmes Motors also argues that Mr. Lowe cannot establish causation because the three-month gap between the filing of his EEOC charge and his termination are

not temporally proximate. (*Id.* at 28–29). Mr. Lowe filed his charge in early November 2023 and was terminated three months later in February 2024. (Doc. 1 ¶¶ 71, 77). The court agrees that a three-month gap would be insufficient to demonstrate causation on its own. *See Thomas*, 506 F.3d at 1364 ("[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.").

But Mr. Lowe does not rely on mere temporal proximity to allege causation. Mr. Lowe alleges that just following his EEOC charge, Holmes Motors promoted him. (Doc. 1 ¶ 72). A week later, the supervisor who announced the promotion told him he was only promoted "in order to get him to drop his charge." (*Id.* ¶ 73). When Mr. Lowe did not drop his charge, he was demoted back to service technician. (*Id.* ¶ 74). Less than two months after Holmes Motors filed its position statement with the EEOC, it terminated Mr. Lowe. (*Id.* ¶¶ 76–77). Mr. Lowe contends, and the court agrees, that these factual allegations suggest causation beyond mere temporal proximity as they reflect a series of connected events indicating that "decisionmakers were aware of Mr. Lowe's protected conduct." (Doc. 11 at 17).

Accordingly, the court **DENIES** Holmes Motors's motion to dismiss Counts Seven and Eight.

## III.  CONCLUSION

The court **DENIES** Holmes Motors's motion to dismiss Counts One, Seven, and Eight. (Doc. 8). All of Mr. Lowes claims shall proceed.

**DONE** and **ORDERED** this February 6, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE